UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

SHAMIKA CRUTCHFIELD

VERSUS

RAILSERVE, INC.

CIVIL ACTION

12-CV-684-JJB-SCR

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion (doc. 12) for Summary Judgment brought by Defendant, Railserve, Inc. ("Railserve"). Plaintiff, Shamika Crutchfield ("Crutchfield"), filed an opposition (doc. 19), to which Railserve has filed a reply (doc. 25). Oral argument is unnecessary. The Court has jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons stated herein, Railserve's Motion (doc. 12) is GRANTED in part and DENIED in part.

**I.   Background**

Crutchfield began working for Railserve as an Offloader on or about July 27, 2010 at the St. James Louisiana transloading facility (the "St. James facility"). Railserve provides contract railroad services, such as railcar switching, track maintenance, railcar cleaning, railcar loading and unloading, and other related services to its industrial clients. As an Offloader at the St. James facility, Crutchfield was generally tasked with moving crude oil and condensate from rail cars to a pipeline. Dealing with these hazardous materials required the utmost care and attention to safety. Therefore, Crutchfield was also responsible for ensuring that she conducted her work in a safe manner. However, Crutchfield was not given these responsibilities without first being properly trained. Upon being hired by Railserve, Crutchfield underwent new hire training in which she learned various policies and procedures.

In addition to training, Crutchfield attended orientation sessions where Railserve made the new hires aware of the company's anti-harassment and reporting policies. These policies

1

were intended to enforce equal employment opportunity and prevent workplace harassment by prohibiting any form of harassment or retaliation on the basis of an employee's race, color, sex or any other protected basis. In addition to becoming aware of Railserve's policies, new employees were informed of the procedures that they could use to report any perceived harassment or retaliation. Any employee who felt that they had been subjected to harassment or retaliation could make a report by either contacting their supervisor, department head or the Human Resources Director or by calling a confidential employee hotline. If a complaint was made, Railserve committed to promptly investigating the claim and taking corrective action if such action was appropriate under the circumstances. *Non-Harassment Policy*, Doc. 12-5, Ex. 3, at 2.

Within months of beginning her employment with Railserve, Crutchfield was promoted to the position of Crew Leader. She became responsible for overseeing the overall offloading process and received a commiserate $4.00 increase in her hourly wage. She was also responsible for ensuring the safety of the employees that she managed.

In early 2011, Crutchfield received an Employee Warning Notice ("EWN") for being late to work. This is around the time that Crutchfield alleges that the sexual harassment perpetrated by her supervisor, Site Leader Jerry Landry ("Landry"), began. The sexual harassment consisted of Landry beginning telephone conversations by asking, "Are you naked?" or "What color panties you got on?" This happened on approximately six occasions. Additionally, after informing Crutchfield that Joe Williams, the manager for the customer at the St. James Facility, did not like her, Landry jokingly suggested that she could find herself in his good graces if she performed a sexual act for him. Finally, Landry brushed up against Crutchfield's backside while walking past her. Neither one of them said anything to the other at the time that this incident

occurred. Though Crutchfield knew of Railserve's reporting policies and procedures, she did not immediately report the incidents. In fact, she waited until August 2011, approximately seven months later, to report these incidents.

Shortly before reporting these incidents, Crutchfield was demoted to the position of Offloader. This occurred after two employees on her crew team were injured on the job. The first injured employee was Aaron Koshko who overheated at work and was taken to the hospital. The second employee was taken to the doctor after getting oil in his eye. After these occurrences, management decided to relieve Crutchfield of her Crew Leader responsibilities but agreed to maintain her increased hourly rate.[1]

Around the time of these incidents, Crutchfield first reported the alleged incidents of sexual harassment. She first called the confidential employee hotline and followed up by contacting Timothy Pullen ("Pullen"), Vice President of Human Resources. After receiving the report, Pullen contacted Landry and discovered that Landry did in fact ask "are you naked" when speaking with Crutchfield. Landry stated that this was his way of jokingly beginning phone conversations with people.[2] Pullen verbally warned Landry about engaging in such behavior and told him to stop as it was against Railserve's policies

The following month, on September 7, 2011, Crutchfield complained to Pullen via an email that she was experiencing hostility from Landry since reporting her complaint. That

---

[1] Crutchfield disputes this assertion alleging that Jerry Landry made the choice to demote her and that these incidents were not the reason for her demotion. The record does not exclude the possibility that Landry was a part of the decision to demote Crutchfield. In fact, it supports Crutchfield's assertion that Landry was a part of the management's decision in that Landry was a part of a telephone conference in which the incident and potential corrective action were discussed. *Decl. of Jason Liner*, Doc. 12-13, Ex. 11, at ¶ 6. The evidence does not suggest however, that Landry was the sole decision-maker. The record demonstrates the decision was a collaborative one made by management. *Decl. of Jason Liner*, at ¶ 7. Finally, as it concerns whether or not these incidents were the reason for Crutchfield's demotion, the Court recognizes at this time that these incidents were the asserted reason for demotion without determining whether it was the actual reason for her demotion.

[2] Crutchfield disputes that Landry was actually joking when he made these remarks to her. The Court therefore takes as fact that Landry told Pullen that these remarks were a joke and not that Landry was actually joking when he made the remarks to Crutchfield.

3

morning, Crutchfield arrived to work late. When Assistant Site Leader, Jason Brocato ("Brocato"), gave Crutchfield a EWN for being late, she claimed that she was being treated unfairly and a war of words commenced between her, Brocato, and Landry, in which Crutchfield became loud and confrontational. Eventually, both Brocato and Crutchfield were sent home for the day. In addition to the unfair treatment and hostilities that she felt she received that morning, Crutchfield complained in her email to Pullen of other hostility that she had experienced since making her report. She informed Pullen that Landry had yelled at her on several occasions. Pullen agreed to speak with Landry. Crutchfield did not recall Landry yelling at her after this but felt that Landry maintained an "angriness over him towards [her]."

Finally, in March 2012, after two incidents of property damage, Railserve terminated Crutchfield's employment. The first incident occurred on January 10, 2012. Crutchfield and a coworker were handling a device when it was dropped and damaged. Both employees received a one day suspension with a warning that any future violations could lead to discharge. A month later, Crutchfield backed one Kubota (a utility vehicle used on the work site) into another, damaging the equipment. Following these incidents, Railserve made the decision to discharge Crutchfield from her employment.

Crutchfield now brings this suit pursuant to Title VII claiming that she suffered gender-based sexual harassment which created a hostile work environment and that she was demoted and fired in retaliation for reporting sexual harassment. Railserve moves this Court for summary judgment arguing that Crutchfield has failed to adduce enough evidence to establish a *prima facie* case of a gender-based hostile work environment. Furthermore, even if Crutchfield could establish a *prima facie* case, Railserve asserts that it is entitled to the protection afforded it by an affirmative defense. Finally, and as it pertains to the retaliation claim, Railserve argues that

4

Crutchfield's fails to satisfy her initial burden to establish her *prima facie* case and her ultimate burden of proving pretext.

## II. Discussion

### A. Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact." FED. R. CIV. P. 56(a). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When the burden at trial rests on the non-moving party, the moving party need only demonstrate that the record lacks sufficient evidentiary support for the non-moving party's case. *Id.* The moving party may do this by showing that the evidence is insufficient to prove the existence of one or more essential elements of the non-moving party's case. *Id.* A party must support its summary judgment position by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." FED. R. CIV. P. 56(c)(1).

Although the Court considers evidence in a light most favorable to the non-moving party, the non-moving party must show that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986). Conclusory allegations and unsubstantiated assertions will not satisfy the non-moving party's burden. *Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 139–40 (5th Cir. 1996). Similarly, "[u]nsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence." *Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991). If, once the non-moving party has been given the opportunity to raise a genuine fact issue, no reasonable juror could find for the non-moving party, summary judgment will be granted for the moving party. *Celotex*, 477 U.S. at 322-23.

### B. Hostile Work Environment

To assert a *prima facie* case of gender-based harassment creating a hostile work environment, the plaintiff employee must normally show that:

> (1) she belongs to a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment complained of was based upon sex; (4) the harassment complained of affected a term, condition, or privilege of employment (i.e. that the sexual harassment was so pervasive or severe as to alter her conditions of employment and create an abusive working environment); and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action.

*Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 806 (5th Cir. 1996). When determining whether a workplace constitutes a hostile work environment, courts must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (citations omitted).

Railserve argues that Crutchfield fails to establish a *prima facie* case for two reasons. First, she cannot demonstrate that the alleged harassment was based upon, or because of, her sex. Second, the experienced harassment did not arise to a level of severity that would trigger Title VII protection. Railserve analogizes the facts of the present case to those in other cases where the Fifth Circuit found summary judgment to be appropriate because such facts did not constitute a hostile work environment. Furthermore, Railserve contends that the *Ellerth/Faragher* affirmative defense applies because it exercised reasonable care by promulgating and implementing policies to prevent sexual harassment, and it took remedial action once it was made aware of Landry's behavior. Crutchfield responds by arguing that she has adduced enough

factual matter to support a *prima facie* case and that the *Ellerth/Faragher* defense is inapplicable to the facts of this case.

"Title VII was only meant to bar conduct that is so severe and pervasive that it destroys a protected classmember's opportunity to succeed in the workplace." *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996), *cert. denied*, 519 U.S. 1055 (1997). After reviewing the evidence submitted on summary judgment and considering the parties' arguments in support or opposition thereof, the Court finds that as a matter of law, the conduct described by Crutchfield was not so severe or pervasive as to affect the terms, conditions, or privileges of her employment. To support her hostile work environment claim, Crutchfield asserts that Landry engaged in the following conduct: (1) on approximately six occasions, beginning telephone conversations by inquiring if she was naked or what type of underwear she was wearing; (2) brushing up against her; (3) suggesting that she perform a lewd act for a coworker; and (4) showing her a sexually inappropriate email. All of this occurred during a seven month period of time. The Fifth Circuit has repeatedly found that allegations such as these are insufficient to prove that alleged workplace harassment was severe or pervasive.

In *Hockman v. Westward Communications*, 407 F.3d 317, 329 (5th Cir. 2004), the court held that the plaintiff's allegations failed to prove severe or pervasive workplace harassment as a matter of law. There, the plaintiff alleged that during a one and one-half year-long period, her coworker harassed her by: (1) making remarks about another coworker's body to the plaintiff; (2) slapping the plaintiff's behind with a newspaper; (3) grabbing or brushing against the plaintiff's breasts and behind; (4) holding the plaintiff's cheeks and attempting to kiss her; (5) asking the plaintiff to come to work early so that they could be alone; and (6) standing in the doorway of the bathroom while the plaintiff was washing her hands. *Id.* at 328. After reviewing

Fifth Circuit precedent, the court found that the plaintiff's allegations were not as severe or pervasive as those present in other cases, and therefore, did not arise to a level that required Title VII scrutiny. *Id.* at 328-29 (reviewing *Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803 (5th Cir. 1996) (finding that comments concerning the plaintiff's sexual proclivities which occurred two to three times a week were severe or pervasive enough to survive summary judgment) and *Waltman v. International Paper Company*, 875 F.2d 468 (5th Cir. 1989) (reversing summary judgment when female employee had been subjected to sexual comments by 80% of the men in her office and not a week went by without such comments being made)).

While Landry's comments and behavior can be characterized as "boorish and offensive," they are even less serious than those presented in *Hockman*. The duration of Crutchfield's experienced harassment was almost half of that experienced by the plaintiff in *Hockman*. Additionally, the plaintiff in *Hockman* experienced grabbing and brushing against both her breasts and behind and on multiple occasions. Here, Crutchfield's behind was brushed against on one occasion. Finally, Landry's telephone remarks, inappropriate emails, and lewd suggestion, though offensive and inappropriate, were isolated incidents which do not amount to discriminatory conduct. *See Hockman*, 407 F.3d at 328 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)) ("The Supreme Court has repeatedly stated that 'simple teasing, offhand comments, and isolated incidents…will not amount to discriminatory changes in the 'terms and conditions of employment.'"); s*ee also Shepherd v. Comptroller of Public Accounts of the State of Texas*, 168 F.3d 871 (5th Cir. 1999) (affirming that isolated incidents of "boorish and offensive" remarks did not render a work environment hostile or abusive). The plaintiff's allegations in *Hockman* were insufficient to establish severe or pervasive harassment. Crutchfield's allegations, which fall short of those presented in *Hockman*, are similarly

insufficient.  Accordingly, Railserve is entitled to summary judgment on this claim.  Finding as it has that Crutchfield has failed to establish a *prima facie* case, the Court will not determine the merits of Railserve's *Ellerth/Faragher* defense.

### C. Retaliation Claims

To establish a *prima facie* showing of retaliation under Title VII, a plaintiff must show that: (1) she was engaged in a Title VII protected activity; (2) she suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action.  *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000).  The plaintiff's *prima facie* showing of retaliation creates an inference of impermissible retaliatory motive.  *Greene v. DaimlerChrysler Services of North America*, 128 F. App'x. 353, 356 (5th Cir. 2005).  At this point the burden would shift to the defendant to produce a legitimate, non-retaliatory reason for the adverse employment action.  If it does, the burden shifts back to the plaintiff to show this reason is merely a pretext for retaliation, which it does by showing that the adverse action would not have occurred but for the protected activity.  *Id.*

Railserve does not contest that the first and second prongs of the *prima facie* test have been satisfied.  Railserve thus acknowledges that reporting Landry's behavior to Pullen satisfies the first prong of the test and that Crutchfield's demotion to Offloader and ultimate discharge constitute adverse employment actions.  Instead, Railserve focuses on the third prong of the *prima facie* test by arguing that Crutchfield has failed to establish a causal link between her engaging in a protected activity and an adverse employment action.  Railserve further argues that even assuming *arguendo* that she has established a *prima facie* case, Crutchfield has failed to satisfy her ultimate burden of showing pretext.

As it pertains to Crutchfield's demotion, Railserve argues that Crutchfield impermissibly relies on the close temporal proximity between her report to Pullen and her demotion to prove her retaliation claim. While Railserve acknowledges that temporality can support an inference of retaliation to establish a *prima facie* case, it contends that without more, mere timing is not enough. Furthermore, Railserve contends that timing is wholly insufficient to show pretext. Therefore, because Railserve has proffered legitimate non-retaliatory reasons for Crutchfield's demotion and Crutchfield cannot point to any evidence other than timing to demonstrate pretext, Railserve concludes that this claim must fail. Concerning Crutchfield's claim of retaliation based upon her discharge, Railserve argues that timing works here to militate against a finding of a causal connection as it is absurd to believe that Railserve waited five to six months after she made her report to Pullen to discharge her. Railserve further argues that even if Crutchfield established a *prima facie* case, she has failed to demonstrate disparate treatment to show retaliation or pretext.

Crutchfield argues that the close proximity between her making a complaint and her demotion coupled with Landry's testimony in which he stated that he did not believe that Crutchfield violated company policy is enough to show pretext. She further argues that the disparate treatment that she received as compared to other Railserve employees who damaged property demonstrates that her discharge was retaliatory. Additionally, this disparate treatment is evidence of pretext.

i. **Retaliatory Demotion**

To establish the third prong of her retaliation claim based upon her demotion, Crutchfield points to evidence that she was demoted two days after she made her report to Pullen. Railserve asserts that this timing is insufficient to establish a causal connection. "Close timing between an

employee's protected activity and an adverse action against [her] may provide the 'causal connection required to make out a prima facie case of retaliation." *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (citation omitted). Therefore, the timing in this case could establish the requisite causal connection. Nevertheless, Crutchfield's retaliatory demotion claim still fails.

Assuming *arguendo* that Crutchfield has made a *prima facie* showing, she has still failed to satisfy her ultimate burden of proving pretext in light of the legitimate, non-retaliatory reasons offered by Railserve to justify her demotion. Railserve states that its justification for demoting Crutchfield was based upon two incidents occurring within a close proximity of each other, where two employees on Crutchfield's team required medical attention for injuries that occurred on her watch. Railserve determined that Crutchfield violated company policy when she failed to timely report an employee's eye injury to Landry. Finally, given the hazardous nature of the work its employees performed and the priority it placed on their safety, Railserve concluded that Crutchfield should not be responsible for ensuring the safety of others. The Court finds that Railserve has articulated legitimate reasons for Crutchfield's demotion.

Crutchfield attempts to prove pretext by pointing to Landry's testimony in which he opines that Crutchfield did not violate company policy. This is insufficient evidence. Landry's testimony is nothing more than a second guessing of Railserve's legitimate reason for Crutchfield's demotion which is in no way germane to the issue of whether Railserve's proffered reasons mask unlawful intent. This is because courts are not concerned with whether or not the employer's decision was in error; but rather courts must determine if the decision was motivated by discriminatory intent. *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995); *see also Bodenheimer v. PPG Industries, Inc.*, 5 F.3d 955, 958 (5th Cir. 1993) ("The employer

need only articulate a lawful reason, regardless of what its persuasiveness may or may not be."). Left with no other evidence of pretext, the Court must conclude that Crutchfield has failed to satisfy her ultimate burden. Accordingly, the retaliatory demotion claim must be dismissed.

### ii. Retaliatory Discharge

Railserve argues that Crutchfield's retaliatory discharge claim fails on both the *prima facie* and pretextual levels. On the *prima facie* level, Railserve argues that the five to six month time gap between Crutchfield's report to Pullen and her discharge breaks the chain of causation. As to a showing of pretext, Crutchfield fails to establish that Railserve's justifications were pretextual based upon a disparate treatment theory because she fails to present evidence of a male comparator with circumstances nearly identical to her own. In response, Crutchfield asserts that the disparate treatment of her as compared to similarly situated employees under nearly identical circumstances both establishes a causal connection and demonstrates pretext.

Once again, Railserve's timing argument is unavailing. The Fifth Circuit has suggested that an extended gap of time between the plaintiff engaging in a protected activity and an adverse employment action can cut against a finding of retaliation. *Mayberry*, 55 F.3d at 1092 (noting that an interval of several years between the adverse action and engaging in a protected activity may be evidence against retaliation). That said however, a five to six month time lapse does not negate a finding of causal connection as Railserve suggests. In fact, the Fifth Circuit has found that fourteen months was not legally conclusive proof against retaliation. *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 43 (5th Cir. 1992); *see also Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (noting with approval a district court's finding that a time lapse of four months was sufficient to establish a causal connection). Accordingly, the Court finds that a time lapse of five to six months does not negate a causal connection between Crutchfield's engagement in a

protected activity and her discharge. The Court proceeds therefore, by determining whether Crutchfield can establish a causal connection on a disparate treatment theory.

To show disparate treatment, Crutchfield must demonstrate that similarly situated employees were treated differently under circumstances "nearly identical" to hers. *Mayberry*, 55 F.3d at 1090. Stated another way, to succeed on a disparate treatment theory, a plaintiff must show "that the misconduct for which [the plaintiff] was discharged was nearly identical to that engaged by…[other] employee[s]." *Oyoke v. University of Texas Houston Health Science Center*, 245 F.3d 507, 514 (5th Cir. 2001) (citations omitted).

Crutchfield identifies the following employees as appropriate comparators: Desmond Benn, Mike Duncan, Cody McEarl, and Jarrett Landor. There is no contention that Crutchfield and the named employees are not similarly situated. Therefore, the Court will proceed under the assumption that they are and focus its inquiry on whether the comparators were retained despite engaging in misconduct nearly identical to that of Crutchfield.

Railserve argues that none of the proffered comparators present circumstances nearly identical to Crutchfield's. The Court agrees with respect to Desmond Benn, Mike Duncan, and Cody McEarl. Crutchfield was discharged after two accidents which caused damage to company equipment within a brief period of time. Specifically, Crutchfield, along with another employee, mishandled and dropped a piece of equipment. She also backed one Kubota into another. In contrast, Desmond Benn ran a Kubota into a truck and he was not discharged. While the misconduct is nearly identical, the circumstances were not as this was his first accident, not second. Mike Duncan also caused damage to a Kubota and was discharged after he was less than forthright during the investigation of the damage. Cody McEarl caused a derailment and was not

discharged. This misconduct involved a different type of accident.³ *See Smith v. Wal-Mart Stores (No. 471)*, 891 F.2d 1177, 1180 (5th Cir. 1990) (finding that employees who engaged in different violations of company policy were not nearly identical).

As to Jarrett Landor, the Court finds that he is the only comparator that could present nearly identical circumstances to Crutchfield's. Like Crutchfield, he was involved in two incidents resulting in damage to Railserve's property within a short period of time. Like Crutchfield, Railserve considered the nature of events and the circumstances that such events presented and made a decision regarding the appropriate punishment. Unlike Crutchfield, he was retained while she was discharged. This disparate treatment is enough to establish a *prima facie* case, *see Coleman v. Exxon Chemical Corp.*, 162 F.Supp.2d 593, 608 (S.D. Tex. 2001) ("[T]he Fifth Circuit has appeared reluctant to reject discrimination claims by applying the 'nearly identical' standard at the *prima facie* stage of the analysis."), and raise a genuine issue of material fact as to whether Railserve's articulated reasons for Crutchfield's discharge were merely pretext for unlawful retaliation.⁴

In sum, Crutchfield has presented one comparator, Jarrett Landor, to both establish a *prima facie* case and raise an issue of material fact as to pretext. Accordingly, Railserve's motion for summary judgment as to the retaliatory discharge claim is DENIED.

### III.   Conclusion

For the reasons stated herein, the Defendant's Motion (doc. 12) for Summary Judgment is GRANTED in part and DENIED in part. Crutchfield's claims for gender-based hostile work

---

³ Crutchfield notes in opposition that Cody McEarl also violated Railserve's policy by causing a "run through switch." Therefore, like Crutchfield, he was involved in two accidents. Nevertheless, Crutchfield's and Cody McEarl's circumstances are not nearly identical because though both had two accidents, Crutchfield's accidents resulted in damage to company property while only one of Cody McEarl's had such a result.

⁴ Railserve has presented evidence that Crutchfield was discharged as a result of the two incidents to property caused by Crutchfield's careless actions. Railserve considered the incidents in light of Crutchfield's experience and the short window of time within which the two incidents occurred.

environment and retaliatory demotion are dismissed.  Crutchfield's retaliatory discharge claim predicated on a disparate treatment theory with Jarrett Landor as a comparator may proceed to trial.

Signed in Baton Rouge, Louisiana, on May 8, 2014.

_____
**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**